UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GREGORY HARVEY,

                                        Plaintiff,
                                                            9:09-CV-0517
v.                                                          (LEK/TWD)

CORRECTIONS OFFICERS 1-6, et al.,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

LEMERY GREISLER, LLC                            PETER M. DAMIN, ESQ.
*Pro Bono* Counsel for Plaintiff
50 Beaver Street
Albany, NY 12866

HON. ERIC T. SCHNEIDERMAN                       LAURA A. SPRAGUE, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## CORRECTED REPORT-RECOMMENDATION AND ORDER

        In this prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, Plaintiff

Gregory Harvey ("Plaintiff") alleges in his Amended Complaint that Defendants violated his

Eighth Amendment rights by subjecting him to excessive force.  (Dkt. No. 50.)  Plaintiff pursued

the action *pro se* through discovery.  Defendants moved for summary judgment which was

granted in part and denied in part.  (Dkt. Nos. 67, 69.)  All claims except excessive force claims

against Defendants Jabout and Reyell were dismissed.  (Dkt. No. 69.)  The Court also found that

Plaintiff failed to exhaust his administrative remedies in connection with the remaining issues

raised in his Amended Complaint.  (Dkt. Nos. 67, 69.)  Defendants' request for an evidentiary

hearing on the issue of failure to exhaust administrative remedies was granted.  (Dkt. No. 73.)

Thereafter, *pro bono* counsel for Plaintiff was assigned.[1]  (Dkt. No. 74.)  An evidentiary hearing

was held on July 12, 2013, and continued on August 23, 2013, on the limited issues of whether

Plaintiff's failure to exhaust may be excused, either because Defendants are estopped from

claiming the failure to exhaust or, alternatively, because special circumstances justify the

Plaintiff's failure to exhaust.

Based upon the evidence presented at the hearing, the Court finds that Plaintiff was not

prevented by the actions of prison officials, including Defendants Jabout and Reyell, from filing

grievances or from pursuing his administrative remedies, including appealing to the

superintendent of the relevant prison and the Central Office Review Committee ("CORC").

Specifically, the Court finds that Plaintiff has not proved estoppel or special circumstances

necessary to provide a basis to excuse his failure to exhaust such remedies.  Therefore, I

recommend that Plaintiff's Amended Complaint (Dkt. No. 50) be dismissed on this procedural

basis, with prejudice and without addressing its merits.

## I.     FACTUAL BACKGROUND

Plaintiff entered the Department of Corrections and Community Supervision ("DOCCS")

system on June 21, 2007, when he was taken to Clinton Correctional Facility ("Clinton") from

Herkimer County Jail following sentencing.  (Dkt. No. 89 at 6-7.)  On the date he arrived at

---

[1]     Attorney Peter M. Damin, Esq., of the Lemery Greisler, LLC, law firm was
appointed as *pro bono* counsel for Plaintiff on April 23, 2013.  (Dkt. No. 74.)  The Court
expresses its gratitude to Attorney Damin for his zealous, learned and industrious representation
on behalf of Plaintiff in this matter.

Clinton, he alleges that he was assaulted by prison staff. *Id.* at 11-13. He was at Clinton for five days (Dkt. No. 89 at 15), at which point he was transferred to Downstate Correctional Facility ("Downstate"). *Id.* He was at Downstate until July 18, 2007, when he was transferred to Sing Sing Correctional Facility ("Sing Sing"). (Dkt. No. 88 at 9.)

## II. HEARING EVIDENCE AND TESTIMONY

At the evidentiary hearing, the Court heard testimony from the Plaintiff, and from one witness for Defendants, Lieutenant Charles Olmstead ("Lt. Olmstead"). The testimony and evidence focused upon the broad issue of whether Plaintiff's failure to exhaust his administrative remedies was excusable under the circumstances.[2] Specifically, the relevant proof at the hearing centered on Plaintiff's contention that Defendants are estopped from asserting an exhaustion defense and special circumstances existed to excuse his failure to exhaust. The relevant evidence and testimony in the context of those specific showings is as follows:

### A. Evidence

The Court received into evidence the following exhibits introduced by Defendants:

D-1. DOCCS Location Chronologic History for Plaintiff;

D-2. Downstate Correctional Facility Rulebook (excerpts, 3pp. total) 10th Revision September 2004; and

D-3. DOCCS Reception/Classification System for Plaintiff (3pp. total).

The Court received into evidence the following exhibits introduced by Plaintiff:

P-10. Letter from Clinton Correctional Facility First Deputy Superintendent, T. LaValley, dated February 3, 2009 (Dkt. No. 70-1 at 4); and

---

[2] The Court previously determined that Plaintiff did not exhaust his administrative remedies. (Dkt. No. 67 at 10; Dkt. No. 69.)

P-11.   Denial of Grievance Request from CORC (Dkt. No. 70-1 at 5), dated June 3,

2009.

**B.      Testimony**

**1.      Plaintiff**

Plaintiff entered the DOCCS system on June 21, 2007, when he was taken to Clinton

from Herkimer County Jail following sentencing.  (Dkt. No. 89 at 6-7.)  He testified that on the

date he arrived at Clinton, he was assaulted by prison staff.  *Id.*  He was at Clinton for five days

and was then transferred to Downstate.  *Id.* at 15.  He was housed at Downstate until July 18,

2007, when he was transferred to Sing Sing.  (Dkt.  No. 88 at 9; Dkt. No. 89 at 17.)

During and immediately after the alleged assault at Clinton, Plaintiff claims he was told

by unnamed correction officers that he would never leave alive; he was also threatened with a

further beating if he told anybody about what happened.  (Dkt. No. 89 at 12-13.)  He did not

know who threatened him or who beat him.  *Id.* at 36-38.  While at Clinton, Plaintiff was placed

in a strip cell and denied access to any paper or any writing utensil although he requested

materials to submit a grievance.  *Id.* at 14.  Plaintiff did not identify any specific person who

denied him paper or writing materials other than indicating that unnamed psychiatric staff

members assured him that he would not remain at Clinton.  *Id.* at 14-15.

Plaintiff indicated he feared for his life due to these threats made by unidentified Clinton

staff.  *Id.* at 13.  However, on the third day at Clinton, Plaintiff told a nurse and the psychiatric

staff about the assault when no correction officer was present.  *Id.* at 13-14.  He claimed the

reputation of Clinton, the beating and threats he received, and the denial of paper or pen on

which to write a complaint caused him not to file any grievance while at Clinton.  *Id.* at 13-15.

Plaintiff was then transferred to Downstate after five days at Clinton. *Id.* at 15. When Plaintiff was transported to Downstate, he did not have any understanding of the grievance procedures and was also not provided with any manual. *Id.* at 18, 41.

Plaintiff indicated he was unaware of the grievance procedure until he arrived at Sing Sing. *Id.* at 19. He testified that he was told by an unidentified "grievance rep" at Downstate that he could not file a grievance at that facility for an incident that occurred at another facility. *Id.* at 16, 40-41. However, at some point while at Downstate, he wrote a grievance to Clinton anyway. *Id.* at 17, 42-43. He also claimed to be unaware of the law library at Downstate. *Id.* at 41.

Plaintiff was then sent from Downstate to Sing Sing. *Id.* at 17. When Plaintiff arrived at Sing Sing, he did not receive orientation nor did he receive any guidance regarding the grievance program. *Id.* at 48-49. However, Plaintiff was told by unidentified grievance staff at Sing Sing that he could not file a grievance there that related to another facility. *Id.* at 17-18. He was also unaware that there was a library at DOCCS' facilities until six months after he arrived at Sing Sing. *Id.* at 41, 49.

Nevertheless, as noted, he wrote a grievance on an unidentified date while at Downstate which he sent to Clinton, but from which he never heard back. *Id.* at 17, 42-43. At his deposition in this case, however, he asserted that he did not file any grievance or reports about the incident at Clinton until after he arrived at Sing Sing. *Id.* at 43-45. When he arrived at Sing Sing, and was again told that he could not file a grievance relating to another facility there, he still sent a grievance directly to Clinton. *Id.* at 18. Plaintiff claimed that unnamed grievance representatives at both Downstate and Sing Sing advised him to provide them with a copy of the

answer to his grievance.  *Id.* at 50.  Based on his conversations with the unnamed grievance representatives and upon consulting of the "jailhouse lawyer manual," it was his understanding of the grievance procedures that he could not move forward with his grievance until he received a denial of his grievance.  *Id.* at 49.  Plaintiff could not recall the name of any grievance representative at either Clinton or Sing Sing to whom he spoke.  *Id.* at 51.  Plaintiff did not ask any questions of the "grievance rep" at either facility after being told he could not file grievances at a facility other than the one at which the incident occurred.  *Id.* at 42.  He later corresponded with Prisoner Legal Services, who told him a little bit more about the grievance policy and he read the "jailhouse lawyer manual."  *Id.* at 18.

Plaintiff then sent an appeal to Superintendent LaValley at Clinton because he did not get an answer to the grievance he sent there, but did not receive a response from LaValley until two years later.  *Id.* at 20.  The response indicated that he had not filed a grievance while at Clinton.  *Id.* at 20.  Once he received the response from the Superintendent, he "immediately" appealed to CORC.[3]  *Id.* at 22.  He did not receive a response from CORC prior to filing suit.  *Id.* at 23.

In support of his testimony regarding his appeals, Plaintiff produced a letter from Superintendent LaValley and a response to an appeal regarding a medical issue from CORC.  *Id.* at 24-25; *see also* Exhibits P-10 and P-11.  Plaintiff claims that while he was appealing another matter to CORC on that medical issue, he inquired in that appeal into why he never received an answer to his February 2009 appeal.  *Id.* at 23, 25.  In the response, CORC indicated "that the grievant's allegation of an assault is untimely and will not be addressed. . . .  Contrary to the

---

[3]       Superintendent LaValley's letter is dated February 3, 2009.  *See* Exhibit P-10.
The Denial of Grievance from CORC indicates the appeal to CORC was filed April 6, 2009.

grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff."  Exhibit P-11; *see also* Dkt. No. 89 at 23-25.  Of note, Plaintiff did not produce copies of the grievances he claims he sent to Clinton, nor any of his correspondence to the Superintendent or to CORC relating to the alleged assault at Clinton on June 21, 2007.

### 2.    **Defendant's Witness, Lieutenant Charles Olmstead**

Defendants offered the testimony of Lt. Olmstead, the reception classification lieutenant from Downstate.  Dkt. No. 88 at 5-6.  He is responsible for supervising the reception process, and has been employed in that capacity since prior to 2007.  *Id.*  Downstate is a reception center for all maximum and medium inmates for the southern part of New York State.  *Id.* at 6.  Lt. Olmstead claimed that all reception inmates, without exception, receive orientation materials at Downstate, including an orientation manual.  *Id.* at 10-11.  Lt. Olmstead testified that a receipt for those materials, which the inmate signs, could not be located for Plaintiff.  *Id.* at 29-30. However, all inmates receive the orientation manual, including inmates in need of medical care due to psychiatric issues.  *Id.* at 14-15, 31.  The documents are distributed to inmates upon their arrival, even before being seen by a nurse.  *Id.* at 31.

The Court received into evidence a copy of page 13 of the orientation manual that the Plaintiff would have received at Downstate according to Lt. Olmstead.  *Id.*; *see also* Exhibit D-2. Olmstead further testified that page 13 of the manual discusses library services available to inmates, and also advises inmates of the grievance program and identifies the rules governing that program.  *Id.* at 12-13;  *see also* Exhibit D-2.  Orientation manuals are also available to inmates in the housing units and at all officer stations in the event an inmate loses his issued copy.  *Id.* at 16.

Lt. Olmstead also testified about an inmate's ability to talk to other inmates and staff members in case of questions regarding prison procedures and policies. *Id.* at 17-18. The housing units are set up in a horseshoe formation, so that inmates in each tier can talk to each other. *Id.* at 17. Inmates are together for food, when getting medications, and during recreation periods, and may talk to each other during those times. *Id.* at 18. Moreover, housing officers are present at all times in the tiers, and there are supervisors regularly available to answer questions. *Id.* All inmates are assigned guidance counselors who speak with them at intake and are available to answer questions. *Id.* at 19-21. The Court received into evidence a document reflecting Plaintiff's intake interview with his guidance counselor. *Id.*; *see also* Exhibit D-3. Lt. Olmstead also noted that there was a library at Downstate, signs for which are posted right by the gymnasium and can be seen when inmates go to recreation. *Id.* at 26. Inmates are permitted to go to the gymnasium almost every day for 45 minutes, and may access the library during that time. *Id.* at 35.

## III.    APPLICABLE LEGAL STANDARDS

### A.    The Prison Litigation Reform Act of 1996

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in

accordance with the rules applicable to the particular institution in which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, DOCCS has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. at 701.5(d)(3)(ii).

An inmate may seek an extension of the time limits in writing at any of the steps, but such a request must be made within forty-five days of the incident being grieved or the decision being appealed. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2013). If an inmate believes that an extension was wrongly denied, he may file a separate grievance protesting the denial. *Id*.

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

**B.** *Hemphill v. State of New York*

Plaintiff's failure to exhaust does not end the review. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)]." *Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 U.S. Dist. LEXIS 32014, at *22, 2010 WL 1235591, at *4 (N.D.N.Y. Mar. 31, 2010). *Hemphill* sets forth a three-part inquiry for district courts. First, courts must determine if administrative remedies were in fact available to plaintiff. In *Hemphill*, the Second Circuit acknowledged the existence of the DOCCS' grievance procedure [N.Y. Comp.Codes R. & Regs. Tit. 7, § 701.7] and stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688. Courts have found administrative grievance procedures unavailable where an inmate was prevented from filing a grievance. *See, e.g., Sandlin v. Poole*, 575 F. Supp. 2d 484,

488 (W.D.N.Y. 2008) (The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals . . . effectively rendered the grievance appeal process unavailable to him.").

Second, courts must determine if the defendants are estopped from presenting non-exhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting his administrative remedies by "'beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility.'" *Hemphill*, 380 F.3d at 688 (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)). Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals. *Murray*, 2010 U.S. Dist. LEXIS 32014, at *36, 2010 WL 1235591, at *5 & n.26 (collecting cases); *McCloud v. Tureglio*, No. 07-CV-0650, 2008 U.S. Dist. LEXIS 124388, at *44, 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) (Lowe, M.J.) ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").

Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the defendants may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified.[4] *Hemphill*, 380 F.3d at 686. "Special circumstances" have been found

_____

[4] Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81 (2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84. The Supreme Court resolved the question in the negative, explaining that PLRA requires "proper exhaustion" – "using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id*. at 90 (citation omitted). Although the Second Circuit has acknowledged that there is some question as to

to include an incorrect but reasonable interpretation of DOCCS regulations or failing to file a grievance in the precise manner prescribed by DOCCS as a result of threats. *See, e.g., Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was reasonable and prison official threatened inmate).

## IV. ANALYSIS

### A. Availability of the Inmate Grievance Program and Plaintiff's Failure to Exhaust Administrative Remedies

This Court previously determined that the IGP was available to Plaintiff and he failed to exhaust his administrative remedies. (Dkt. Nos. 67 and 69.) Therefore, the inquiry turns to whether Defendants are estopped from asserting the exhaustion defense and/or whether special circumstances exist to excuse Plaintiff's failure to exhaust his administrative remedies.

### B. Plaintiff's Claim of Estoppel

Under the *Hemphill* analysis, the Court must determine whether Plaintiff has shown that he was estopped from filing a grievance regarding the alleged February 2007 incident at Clinton. Plaintiff bases his claim of estoppel upon the following events: (1) the threat of an unnamed sergeant who told him "you'll never leave here alive," (Dkt. No. 89 at 12); (2) the unknown correction officer who led the assault told him that if he told anyone that he'd be beaten again, (*id.* at 12-13); and (3) denial of his request for materials to submit a grievance at Clinton because he was in a "strip cell." *Id.* at 14.

---

whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases. *See, e.g., Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense).

Plaintiff claimed he feared for his life due to the threats made by Clinton staff. *Id.* at 13. Nonetheless, he indicated that on the third day he was at Clinton, he advised a nurse and the psychiatric staff that he had been assaulted. *Id.* at 13-14. Moreover, his testimony that he requested writing materials to prepare a complaint while at Clinton suggests that he was not deterred from pursuing his administrative remedies. *Id.* at 14. There was no testimony from Plaintiff suggesting that he had difficulty obtaining materials with which to write a grievance at any time within the 21 days after the assault other than the five days he was at Clinton. He was then transferred to Downstate and remained there for approximately three weeks. *Id.* at 9; *see also* Exhibit D-1. Plaintiff claims he continued to complain about the assault when he arrived at Downstate, which was within the 21-day period for filing a grievance. *Id.* at 15-16; *see also* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a). Given the Plaintiff's testimony about his report of an assault to the nurse while at Clinton, his transfer from Clinton to Downstate within the 21-day period in which to file a grievance, and the lack of evidence suggesting any fear of filing a grievance while at Downstate, it is apparent that any alleged threats made by individuals at Clinton did not inhibit him from exhausting his administrative remedies within the time limit for filing a grievance. Notably, Plaintiff's testimony that he did not have any understanding of grievance procedures until arriving at Sing Sing contradicts his own testimony that he reported the assault to a nurse and the psychiatric staff at Clinton, and that he sent a grievance to Clinton while at Downstate. (*See* Dkt. No. 89 at 14-20.)

Moreover, Plaintiff's testimony failed to establish that the named Defendants had any involvement in any of the actions supporting his claims of estoppel. Plaintiff indicated that there were approximately ten individuals present and/or involved in the excessive force. *Id.* at 32. He

13

named Defendants Jabaut and Reyell based solely on the information he was provided by the Office of the Attorney General in the course of this litigation, and surmised that they were involved in the alleged assault. *Id.* at 32-35. There was no testimony or evidence, other than the Plaintiff's speculation, that the two named Defendants were present and involved in the alleged assault, or that they threatened Plaintiff in any fashion. Similarly, Plaintiff did not offer any testimony that the named Defendants had any involvement in denying him writing materials necessary to file a grievance while at Clinton, or that they were involved in his transfer to Upstate.

To justify the failure to exhaust by estoppel, the plaintiff must offer credible evidence that the named defendants took steps to interfere with or inhibit the grievance process. *Murray,* 2010 U.S. Dist. LEXIS 32014, at *36, 2010 WL 1235591, at *5 & n.26; *see also Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006); *Smith v. Woods*, No. 03-CV-0480 (DNH/GHL), 2006 U.S. Dist. LEXIS 29745, at *75, 2006 WL 1133247, at *16, (N.D.N.Y. Mar. 17, 2006), *aff'd*, 219 F. App'x 110 (2d Cir. 2007). Other than his own speculation, Plaintiff has failed to offer any evidence that would suggest that the named Defendants threatened him, denied him the materials to write a grievance, interfered in any way with his ability to file a grievance, or had anything to do with his tranfer to other facilities.

In short, there was absolutely no evidence presented showing that the named Defendants in this case prevented the Plaintiff from filing a grievance and, as such, Plaintiff has failed to show Defendants should be estopped from asserting he did not exhaust his administrative remedies. *Murray*, 2010 U.S. Dist. LEXIS 32014, at *36, 2010 WL 1235591, at *5 & n.26 (collecting cases); *McCloud*, 2008 U.S. Dist. LEXIS 124388, at *44, 2008 WL 1772305, at *12

14

("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").

Even if Plaintiff's speculative testimony as to the identity of the individuals who threatened him were credited, the record is clear that Plaintiff was not inhibited from filing a grievance within the required time frame. *See, e.g., Mateo v. O'Connor*, No. 08 Civ. 11053 (RJH)(DCF), 2010 U.S. Dist. LEXIS 81972 at *15-*17, 2010 WL 3199690, at *5 (S.D.N.Y. Aug. 12, 2010)("[I]n this case, the threats were of no consequence. By his own admission, [plaintiff] was not prevented from following the prison's internal grievance procedure. Instead, [plaintiff] did pursue administrative remedies. . . ."). Plaintiff testified that he was willing to write a complaint while still at Clinton, and was transferred to a different facility while he still had over two weeks to file a grievance. (Dkt. No. 89 at 14-16.) There is no testimony in the record that suggests the Plaintiff's concerns about staff at Clinton became a concern at Downstate for any reason, nor that he would have had any difficulty in filing a timely grievance at Downstate due to any actions of the named Defendants. Accordingly, the Plaintiff has failed to establish that the Defendants are estopped from asserting the defense of failure to exhaust administrative remedies.

### C. Plaintiff's Claim of Special Circumstances

Plaintiff submits that special circumstances exist to excuse his failure to comply with the exhaustion requirement. However, for the reasons that follow, the Court finds that Plaintiff failed to show special circumstances warranting his failure to exhaust administrative remedies. Additionally, the Court finds Plaintiff's conflicting testimony is not credible.

Although Plaintiff indicated during his direct testimony that he was not aware that there

was a grievance procedure until he arrived at Sing Sing, he claims he sent a grievance to Clinton from Downstate. (Dkt. No. 89 at 17-18.) He later testified that he was told by staff at Downstate that he needed to exhaust his administrative remedies. (Dkt. No. 88 at 40.) The latter version of Plaintiff's testimony is supported by his assertion that he spoke with a grievance representative at Downstate, which is when he claims he received erroneous information about his ability to file at that facility for the Clinton assault. *Id.* at 16, 40-41. Plaintiff also initially indicated that he was not given any orientation at Downstate. *Id.* at 41. However, he then later testified that orientation was at Downstate rather than Sing Sing. *Id.* at 48.

The Court also finds that the Plaintiff did not attempt to file a grievance until after he left Downstate. Although he testified during the exhaustion hearing that he sent a grievance directly to Clinton while at Downstate, that testimony conflicted with his prior deposition testimony, at which point he indicated he did nothing to exhaust his administrative remedies until he arrived at Sing Sing. *Id*. at 43-45. The Plaintiff's deposition testimony is supported by the date of the letter he received from Superintendent LaValley. *Id.* at 19-20; *see also* Exhibit P-10. Although Plaintiff indicated that he did not receive a response from Superintendent LaValley for two years after he filed what he claimed was an appeal, that testimony is not supported by any documentary evidence. The date of the letter from Superintendent LaValley to the Plaintiff, February 3, 2009, is the earliest documentary evidence relating to Plaintiff's attempts to grieve the alleged assault which occurred in June of 2007. This, coupled with Plaintiff's contradictory testimony, suggests that Plaintiff failed to make any attempts to file a grievance or exhaust his administrative remedies until well after the deadline for filing a grievance had passed.

Special circumstances justifying the failure to exhaust generally involve an incorrect, but

reasonable, interpretation of DOCCS' regulations. *See, e.g., Giano*, 380 F.3d at 675-

76. The Court finds that Plaintiff has failed to establish special circumstances in this case,

because there is simply no credible record evidence suggesting that he reasonably misunderstood

the grievance procedures. Although Plaintiff initially alleged that he was unaware of the

grievance process until some time after his arrival at Sing Sing, he clearly testified during the

exhaustion hearing that he was made aware, while he was at Downstate, that he needed to

exhaust his administrative remedies with respect to the assault. (Dkt. No. 89 at 40.) He also

gave testimony, albeit conflicting with his prior deposition testimony, that he sent a grievance to

Clinton when he was at Downstate. *Id.* at 17. Despite this knowledge, Plaintiff did not take any

other steps to exhaust his administrative remedies within the requisite time frames. *Id.* at 46-47.

He also testified inconsistently as to when and where he was when he initially filed a grievance

about the assault, and about when and what he was told regarding the grievance process. *Id.* at

16-19, 40-48.

Then version of Plaintiff's testimony that he was made aware at Downstate that he needed

to exhaust his administrative remedies with respect to the assault, is consistent with Lt.

Olmstead's testimony that all inmates upon arrival at Downstate receive orientation materials,

including an orientation manual that contains information about the grievance process. (Dkt. No.

88 at 10-11.) While Plaintiff claims he did not receive orientation materials and his

acknowledgment receipt for same could not be located by DOCCS, he testified that orientation

was indeed held at Downstate. (Dkt. No. 89 at 48.)

Plaintiff also claims he was told he could not appeal to CORC without a denial from the

Superintendent and contends he immediately did file the appeal with CORC after receiving a

denial from the Clinton Superintendent. *Id.* at 21-22. However, in order to prevail on an argument that he failed to exhaust due to the non-responsiveness of the IGRC, a plaintiff must show that he nonetheless followed the grievance procedure through all of the steps in the DOCCS regulations in a timely manner. *See, e.g., Goodson v. Silver*, 9:09-CV-0494 (GTS/DRH), 2012 U.S. Dist. LEXIS 137177, at *12, 2012 WL 4449937, at *4, n.4 (N.D.N.Y Sept. 25, 2012); *Belile v. Griffin*, No. 9:11-CV-0092 (TJM/DEP), 2013 U.S. Dist. LEXIS 47137, at *10, 22-23, 2013 WL 1776086, at *3-4, 7 (N.D.N.Y. Feb. 12, 2013); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), *aff'd*, 178 F. App'x 39 (2d Cir. 2006); *Atkins v. Menard*, No. 9:11-CV-0366 (GTS/DEP), 2012 U.S. Dist. LEXIS 130059, at *13, 2012 WL 4026840, at *4, (N.D.N.Y. Sept. 12, 2012) (finding that plaintiff failed to exhaust where he had the "ability, and indeed the duty, to appeal the IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete the grievance process."); *Midalgo v. Bass*, No. 03-CV-1128 (NAM/RFT), 2006 U.S. Dist. LEXIS 98871, at *16-17, 2006 WL 2795332, at *7 (N.D.N.Y. Mar. 26, 2006) (observing that plaintiff was required to seek an appeal to the superintendent, even though he never received a response to his grievance and was not assigned a grievance number); *Gill v. Frawley*, No. 02-CV-1380, 2006 U.S. Dist. LEXIS 41984, 2006 WL 1742738, at *11 (N.D.N.Y. June 22, 2006) (Lowe, M.J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or

destruction of that grievance."); *Waters v. Schneider*, No. 01 Civ 5217(SHS), 2002 U.S. Dist. LEXIS 7166, at *4-5, 2002 WL 727025, at *2 (S.D.N.Y. Apr. 23, 2002) (finding that in order to exhaust administrative remedies, plaintiff had to file an appeal with the superintendent from IGRC's non-response to his grievance, of which no record existed).

Here, Plaintiff has failed to credibly show he followed the required grievance steps. Even crediting Plaintiff's claims that he filed a grievance and appeals, he has failed to show these steps were taken in a timely fashion. There is no evidence other than Plaintiff's contradictory statements that he filed a grievance within the 21-day period. The letter from Superintendent LaValley referencing Plaintiff's grievance concern is dated February 3, 2009. *See* Exhibit P-10. Plaintiff alleges the assault occurred on June 21, 2007. (Dkt. No. 89 at 11-13.) The Denial of Grievance from CORC indicates Plaintiff's grievance appeal to CORC was filed on April 6, 2009, which is more than sixty days after the date of LaValley's letter to Plaintiff. *See* Exhibits P-10 and P-11. Plaintiff was moved to Sing Sing in July of 2007 where he read the "jailhouse lawyer manual" and became aware of the grievance process. (Dkt. No. 89 at 18-19.) The DOCCS grievance process clearly indicates that an inmate may appeal a superintendent's decision to CORC by appealing it within seven days of receipt. 7 N.Y.C.R.R. §701.5(d). Thus, at the time of Superintendent LaValley's letter, Plaintiff was aware of the grievance process and failed to follow it. Moreover, his testimony regarding what he was told about the grievance process, and his attempts to file a grievance and appeals, is inconsistent at best and not supported by other credible evidence in the record. In short, Plaintiff's testimony and the record evidence fail to establish his claim that special circumstances existed to justify his failure to exhaust administrative remedies.

## V. CONCLUSION

Based upon the evidence presented at the hearing, it is recommended that Plaintiff's Amended Complaint be dismissed on the grounds an administrative grievance process was available to him and he failed to exhaust those administrative remedies. Plaintiff was not prevented by the actions of prison officials, namely the Defendants, from filing a grievance or from pursuing his administrative remedies. He also failed to demonstrate the existence of reasonable and credible special circumstances justifying his failure to exhaust administrative remedies, including timely appealing to the superintendent of the relevant correction facility and timely appealing to CORC.

Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik*, 366 F.3d 85, 86-87 (2d Cir. 2004). However, if a prisoner has failed to exhaust administrative remedies or provide a valid excuse for failure to do so, and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. *Id*. at 86; *see also Hilbert v. Fischer*, No. 12 Civ. 3843 (ER), 2013 U.S. Dist. LEXIS 126881, at *23-24, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 4, 2013) (where the time to file a grievance and request an exception to the time limit has long since expired, and plaintiff has failed to establish an excuse for his failure to exhaust, dismissal with prejudice is proper). Because Plaintiff has failed to establish a credible excuse for his failure to exhaust, the Court recommends that the dismissal of his Complaint be with prejudice.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 50) in this action be

**DISMISSED**, with prejudice, based upon his failure to comply with the exhaustion requirements

of 42 U.S.C. § 1997e(a); and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of all unpublished decisions cited

in this Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76

(2d Cir. 2009) (per curiam).

Dated:     March 18, 2014
           Syracuse, NY


Therese Wiley Dancks
United States Magistrate Judge